**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF WISCONSIN**
**MILWAUKEE DIVISION**

| | |
|---|---|
| LORANDA VEIS, individually and on behalf of all others similarly situated, | Case No.: 19-cv-960 |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| vs. | |
| ATLANTIC CREDIT AND FINANCE INC., | **Jury Trial Demanded** |
| Defendant. | |

## INTRODUCTION

1.     This class action seeks redress for collection practices that violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* (the "FDCPA").

## JURISDICTION AND VENUE

2.     The court has jurisdiction to grant the relief sought by the Plaintiff pursuant to 15 U.S.C. § 1692k and 28 U.S.C. §§ 1331, 1337, and 1367.  Venue in this District is proper in that Defendant directed its collection efforts into the District.

## PARTIES

3.     Plaintiff Loranda Veis is an individual who resides in the Eastern District of Wisconsin (Milwaukee County).

4.     Plaintiff is a "consumer" as defined in the FDCPA, 15 U.S.C. § 1692a(3), in that Defendant sought to collect from her a debt allegedly incurred for personal, family or household purposes.

5.     Defendant Atlantic Credit & Finance Inc. ("ACF") is a debt collection agency with its principal offices located at 111 Franklin Road, SE, Suite 400, Roanoke, VA 24011.

6.     ACF is engaged in the business of a collection agency, using the mails and telephone to collect consumer debts originally owed to others.

7.     ACF is engaged in the business of collecting debts owed to others and incurred for personal, family or household purposes.

8.     ACF is a "debt collector" as defined in 15 U.S.C. § 1692a.

## FACTS

9.     On or about April 20, 2018, Synchrony Bank mailed a debt collection letter to Plaintiff's husband regarding an alleged debt.  A copy of this letter is attached to this complaint as Exhibit A.

10.    Upon information and belief, the alleged debt to which Exhibit A refers was an American Eagle, Inc. branded credit card owed to Synchrony Bank ("Synchrony") with an account number ending in 4638.

11.    At some point between April 20, 2018 and December 10, 2018, Synchrony sold Plaintiff's Synchrony account to Midland Funding, LLC ("Midland Funding").

12.    Midland Funding is engaged in the business of collecting debts, in that it purchases and receives assignment of consumer debts that are in default at the time it acquires them. Midland Funding is part of one of the largest debt buyer and debt collection outfits in the industry, with consumer debt portfolios in the hundreds of millions of dollars.  The 2013 10-K filing for Midland Funding's parent company, Encore Capital Group, Inc. ("Encore"), states that Encore has "one of the industry's largest financially distressed consumer databases." (Form 10-K, 12/31/13, p. 2).

13.    According to Encore's 2013 Form 10-K, Encore spent more than $525 million to purchase consumer credit card accounts in the U.S.  As Encore paid less than 10 cents on the dollar, the face value of those accounts is in the tens of billions of dollars.

2

14.     On or about December 10, 2018, Defendant mailed a debt collection letter to Plaintiff's husband regarding an alleged debt.  A copy of this letter is attached to this complaint as Exhibit B.

15.     Upon information and belief, the debt listed in Exhibit B is the same Synchrony Bank American Eagle, Inc. branded credit card with an account number ending in 4638, except that the account had been sold to Midland Funding.

16.     Exhibit B states a "Last Paid Date" of 02/11/2018.

17.     On or about December 12, 2018, Defendant mailed a debt collection letter to Plaintiff regarding an alleged debt.  A copy of this letter is attached to this complaint as Exhibit C.

18.     Upon information and belief, the debt listed in Exhibit C is the same Synchrony Bank American Eagle, Inc. branded credit card with an account number ending in 4638.

19.     Exhibit C lists the "Last Paid Amount" as "No Payment on Record."

20.     On or about March 11, 2019, Defendant mailed another debt collection letter to Plaintiff regarding an alleged debt.  A copy of this letter is attached to this complaint as Exhibit D.

21.     Upon information and belief, the debt listed in Exhibit D is the same Synchrony Bank American Eagle, Inc. branded credit card with an account number ending in 4638.

22.     Upon information and belief, Exhibits B, C and D are form letters, generated by computer, and with the information specific to Plaintiff inserted by computer.

23.     Upon information and belief, Exhibits B, C and D is a form debt collection letter used by Defendant to attempt to collect alleged debts.

24.     Upon information and belief, the alleged debt to which Exhibits B, C and D refer was incurred for personal, family, or household purposes.

3

25.     Upon information and belief, the alleged debt to which <u>Exhibits B, C and D</u> refer was a credit card originally owed to Synchrony Bank ("LCC").

26.     Upon information and belief, <u>Exhibit B</u> was mailed fewer than thirty days after Plaintiff received the initial written communication from Defendant regarding the debt referenced in <u>Exhibit B</u>.

27.     <u>Exhibit B</u> states that "the opportunity to pay the listed above does not alter or amend your validation rights as described in our previous letter to you."

28.     Upon information and belief, the "validation rights as described in our previous letter" to which Defendant is referring is the Plaintiff's right to dispute the debt during the thirty-period following the consumer's receipt of the debt collector's initial written communication. *See,* 15 U.S.C. § 1692g.

29.     The face of <u>Exhibit B</u> instructs the consumer to "please see reverse side for important disclosure information."

30.     The "important disclosure information" on the reverse side of <u>Exhibit B</u> instructs consumers that "For disputes call 800-888-9419 or write to: PO BOX 13386 Roanoke, VA 24033-3386."

31.     The instruction that the consumer can call or write for disputes, when made in a follow-up letter mailed during the thirty-day validation period, is deceptive, confusing, misleading, and unfair to the consumer because it suggests that disputes communicated telephonically are equivalent to disputes communicated in writing even though a dispute does not trigger the requirement that the debt collector cease collection pending verification of the debt unless it is made in writing. *Beaufrand v. Portfolio Recovery Assocs., LLC*, No. 18-cv-214, 2018 U.S. Dist. LEXIS 197339, at *13-15 (E.D. Wis. Nov. 20, 2018); 15 U.S.C. § 1692g(b); *Evans v. Portfolio Recovery Assocs.*, 889 F.3d 337 (7th Cir. 2018).

4

32.     Exhibits B and C also contain confusing and misleading "Last Payment" information.

33.     Exhibit B states that the "Last Paid Date" was February 11, 2018.

34.     Exhibit C states "Last Paid Date: No Payment on Record" and "Last Paid Amount: No Payment on Record."

35.     The representation that the debt collector has records of a consumer's payment in one debt collection letter but that it has no payment on record in another debt collection letter is materially confusing and misleading to the consumer.

36.     The consumer either tendered a payment or did not.  If the consumer did not tender a payment on February 11, 2018, then the Exhibit B "Last Paid Date" is false.  If the consumer did tender a payment on February 11, 2018, then the representation that ACF has no payment on record as stated in Exhibit C is deceptive and misleading.

37.     In either case, the unsophisticated consumer presented with a debt collection letter that falsely represented the account history would be materially confused and misled.  *See, e.g., Fields v. Wilber Law Firm, P.C.*, 383 F.3d 562, 566 (7th Cir. 2004) (account history information is not "irrelevant" simply because the consumer can consult his own records to obtain clarification); *Smith v. Am. Revenue Corp.*, No. 04-cv-199-PRC, 2005 U.S. Dist. LEXIS 48680, at *18-19 (N.D. Ind. May 16, 2005) (same) (citing *Fields*, 383 F.3d at 566).

38.     Moreover, the unsophisticated consumer understands that the date and amount of last payment of a debt is a material aspect of the debt that appears on the consumer's credit report.  *E.g., Brancato v. Specialized Loan Servicing, LLC*, No. 15-cv-6780 (PGS)(LHG), 2018 U.S. Dist. LEXIS 96658, at *12-13 (D.N.J. June 8, 2018).

5

39.     In light of the confusing and inherently contradictory representations in <u>Exhibits B and C</u>, the consumer would feel threatened with the prospect of false information on her credit report.  *Daley v. A & S Collection Assocs., Inc.*, 717 F. Supp. 2d 1150, 1155 (D. Or. 2010).

40.     The false and contradictory representations regarding the Last Paid Date is material to the consumer because it has important implications for consumer credit reporting, and also call into question whether other information in <u>Exhibit B</u> – including the total balance stated – was actually correct or was based on incorrect information, including the failure to process a prior payment.

41.     Additionally, the conflicting Last Payment information would leave consumers scratching their heads and wondering whether the letter was a legitimate collection effort, and whether the consumer should attempt to contact ACF to cancel the pending payment that she had scheduled.  *Janetos*, 825 F.3d at 324-25 (observing that false or confusing account information may signal that the debt collector was not acting legitimately); *Tourgeman v. Collins Fin. Servs., Inc.* 755 F.3d 1109, 1120 (9th Cir. 2014) (same); *Derosia v. Credit Corp. Sols.*, 2018 U.S. Dist. LEXIS 50016, at *9-10 (E.D. Wis. Mar. 27, 2018) (same); *Pardo v. Allied Interstate, LLC*, 2015 U.S. Dist. LEXIS 125526, at *6 (S.D. Ind. Sept. 21, 2015); *Green v. Monarch Recovery Mgmt.*, 2015 U.S. Dist. LEXIS 98765, at *15 (S.D. Ind. July 29, 2015); *Dilallo v. Miller & Steeno, P.C.*, 2016 U.S. Dist. LEXIS 116188, at *6 (N.D. Ill. Aug. 30, 2016) (same); *Walls v. United Collection Bureau, Inc.*, 2012 U.S. Dist. LEXIS 68079, at *5-6 (N.D. Ill. May 16, 2012) (same); *Braatz v. Leading Edge Recovery Solutions, LLC*, 2011 U.S. Dist. LEXIS 123118, at *4 (N.D. Ill. Oct. 20, 2011) (same).

42.     Consumers understand that consumer fraud is rampart in the debt buying industry, where even legitimate debts may lead to fraud because they may be sold to more than one purchaser at a time:

> Americans are currently late on more than $600 billion in bills, according to Federal Reserve research, and almost one person in 10 has a debt in collectors' hands. The agencies recoup what they can and sell the rest down-market, so that iffier and iffier debt is bought by shadier and shadier individuals. Deception is common. Scammers often sell the same portfolios of debt, called "paper," to several collection agencies at once, so a legitimate IOU gains illegitimate clones.

https://www.bloomberg.com/news/features/2017-12-06/millions-are-hounded-for-debt-they-don-t-owe-one-victim-fought-back-with-a-vengeance (accessed: May 20, 2019).

43.     The confusion engendered by Exhibits B and C is material because the unsophisticated consumer would be concerned about the possibility of having to pay the same debt twice, even assuming Defendant was not purposefully acting in bad faith. *Janetos*, 825 F.3d at 324-25; *see also, FTC v. Swatsworth*, 2018 U.S. Dist. LEXIS 142696, at *4 (W.D.N.C. Aug. 22, 2018) ("The loan information contained in the Portfolio that Defendants purchased was falsified. . . . No legitimate 500FastCash loans were ever sold to SQ Capital or Defendants.").

44.     Notwithstanding the confusion engendered by Exhibits B and C, Plaintiff did not revoke Defendant's authority to debit the recurring payment in the amount of $25.00 referenced in Exhibit D.

45.     Additionally, on the face of Exhibits C and D, it is impossible to determine the amount that Defendant is attempting to collect because both letters completely fail to state the actual amount of the debt despite the fact that the letters admit that they are attempts to collect a debt:

**THIS COMMUNICATION IS FROM A DEBT COLLECTOR. THIS IS AN ATTEMPT TO COLLECT A DEBT. ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.**

Exhibits C and D.

46. "The FDCPA requires a debt collector to accurately, and without deceptive language, state the amount of the debt owed." *Ozier v. ACF Sols., LLC*, No. 17-CV-118-JPS, 2017 U.S. Dist. LEXIS 126017, at *6 (E.D. Wis. Aug. 9, 2017). "It is not enough that the dunning letter state the amount of the debt that is due. It must state it clearly enough that the recipient is likely to understand it." *Chuway v. Nat'l Action Fin. Servs.*, 362 F.3d 944, 948 (7th Cir. 2004) citing *Bartlett v. Heibl*, 128 F.3d 497, 500-01 (7th Cir. 1997); *Avila v. Rubin*, 84 F.3d 222, 226 (7th Cir. 1996); *Terran v. Kaplan*, 109 F.3d 1428, 1431-32 (9th Cir. 1997); *Miller v. Payco-General American Credits, Inc.*, 943 F.2d 482, 483-84 (4th Cir. 1991).

47. The Seventh Circuit has held that a debt collector must state the correct amount of the debt on the date a letter is sent to a consumer. *Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, & Clark, L.L.C.*, 214 F.3d 872, 875 (7th Cir. 2000):

> It is no excuse that it was "impossible" for the defendants to comply when as in this case the amount of the debt changes daily. What would or might be impossible for the defendants to do would be to determine what the amount of the debt might be at some future date if for example the interest rate in the loan agreement was variable. What they certainly could do was to state the total amount due--interest and other charges as well as principal--on the date the dunning letter was sent. We think the statute required this.

48. While *Miller* addressed a debt collector's obligation to provide the amount of the debt under 15 U.S.C. § 1692g(a)(1), the Seventh Circuit has held that the standards for claims under § 1692e and § 1692g are the same. *McMillan v. Collection Professionals, Inc.*, 455 F.3d 754, 759 (7th Cir. 2006):

> We cannot accept the district court's view that claims brought under § 1692e or § 1692f are different from claims brought under § 1692g for purposes of Rule 12(b)(6) analysis. Whether or not a letter is 'false, deceptive, or misleading' (in violation of § 1692e) or 'unfair or unconscionable' (in violation of § 1692f) are inquiries similar to whether a

8

letter is confusing in violation of § 1692g. After all, as our cases reflect, the inquiry under §§ 1692e, 1692g and 1692f is basically the same: it requires a fact-bound determination of how an unsophisticated consumer would perceive the letter.

49.     The Seventh Circuit in *Miller* found a collection letter violated the FDCPA because while it disclosed the amount of unpaid principal on the debt, it informed the consumer that the amount did not include unpaid interest, late charges, escrow advances, or other charges, and then instructed the consumer to call an 800 number to obtain complete figures. *Miller*, 214 F.3d at 875. The Seventh Circuit rejected the proposition that a debt collector could provide incomplete information in a dunning letter so long as it provided a telephone number for the debtor to call, explaining, "It is notorious that trying to get through to an 800 number is often a vexing and protracted undertaking,  and anyway, unless the number is recorded, to authorize debt collectors to comply orally would be an invitation to just the sort of fraudulent and coercive tactics in debt collection that the Act aimed (rightly or wrongly) to put an end to." *Miller*, 214 F.3d at 875; *Fields v. Wilber Law Firm*, P.C., 383 F.3d 562, 566 (7th Cir. 2004)

50.     In the instant case, not even the unpaid principal is included in Exhibits C and D. If Plaintiff wanted to find out anything about the amount of the debt or whether her payment was credited, she would be forced to call ACF.

51.     ACF's letters (Exhibits C and D) fail to state the amount of the debt on the date that the letters are sent to the consumer.

52.     ACF's misrepresentation is a material false statement (*see Hahn v. Triumph P'ships LLC*, 557 F.3d 755, 757-58 (7th Cir. 2009)) because it misleads the unsophisticated consumer about the amount of the debt. 15 U.S.C. § 1692e(2)(a).

53.     The unsophisticated consumer would be confused by Exhibits B-D.

54.     Plaintiff read Exhibits A-D.

9

55.     Plaintiff was confused by Exhibits B-D, and as a result, incurred injury, including lost time and money.

56.     Plaintiff had to spend time and money investigating Exhibits B-D.

57.     Plaintiff had to take time to obtain and meet with counsel, including traveling to counsel's office by car and its related expenses, including but not limited to the cost of gasoline and mileage, to advise Plaintiff on the consequences of Exhibits B-D.

### The FDCPA

58.     The FDCPA creates substantive rights for consumers; violations cause injury to consumers, and such injuries are concrete and particularized. *Derosia v. Credit Corp Solutions*, 2018 U.S. Dist. LEXIS 50016, at *12 (E.D. Wis. Mar. 27, 2018) ("'a plaintiff who receives misinformation form a debt collector has suffered the type of injury the FDCPA was intended to protect against' and 'satisfies the concrete injury in fact requirement of Article III.'") (quoting *Pogorzelski v. Patenaude & Felix APC*, 2017 U.S. Dist. LEXIS 89678, 2017 WL 2539782, at *3 (E.D. Wis. June 12, 2017)); *Spuhler v. State Collection Servs.*, No. 16-CV-1149, 2017 U.S. Dist. LEXIS 177631 (E.D. Wis. Oct. 26, 2017) ("As in Pogorzelski, the Spuhlers' allegations that the debt collection letters sent by State Collection contained false representations of the character, amount, or legal status of a debt in violation of their rights under the FDCPA sufficiently pleads a concrete injury-in-fact for purposes of standing."); *Lorang v. Ditech Fin. LLC*, 2017 U.S. Dist. LEXIS 169286, at *6 (W.D. Wis. Oct. 13, 2017) ("the weight of authority in this circuit is that a misrepresentation about a debt is a sufficient injury for standing because a primary purpose of the FDCPA is to protect consumers from receiving false and misleading information."); *Neeley v. Portfolio Recovery Assocs., LLC*, 268 F. Supp. 3d 978, 982 (S.D. Ind. Aug. 2, 2017) ("[N]othing in *Spokeo* overruled the Seventh Circuit's decisions that emphasized and affirmed

the power of Congress to pass legislation creating new rights, which if violated, would confer

standing under Article III.") (alteration in original) (quoting *Saenz v. Buckeye Check Cashing*,

2016 U.S. Dist. LEXIS 127784, at *5 (N.D. Ill. Sep. 20, 2016); *Qualls v. T-H Prof'l & Med.*

*Collections, Ltd.*, 2017 U.S. Dist. LEXIS 113037, at *8 (C.D. Ill. July 20, 2017) ("Courts in this

Circuit, both before and after *Spokeo*, have rejected similar challenges to standing in FDCPA

cases.") (citing "*Hayes v. Convergent Healthcare Recoveries, Inc.*, 2016 U.S. Dist. LEXIS

139743 (C.D. Ill. 2016)); *Bock v. Pressler & Pressler, LLP*, No. 11-7593, 2017 U.S. Dist. LEXIS

81058 *21 (D.N.J. May 25, 2017) ("through [s]ection 1692e of the FDCPA, Congress

established 'an enforceable right to truthful information concerning' debt collection practices, a

decision that 'was undoubtedly influenced by congressional awareness that the intentional

provision of misinformation' related to such practices, 'contribute[s] to the number of personal

bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy,");

*Quinn v. Specialized Loan Servicing, LLC*, No. 16 C 2021, 2016 U.S. Dist. LEXIS 107299 *8-13

(N.D. Ill. Aug. 11, 2016) (rejecting challenge to Plaintiff's standing based upon alleged FDCPA

statutory violation); *Lane v. Bayview Loan Servicing, LLC*, No. 15 C 10446, 2016 U.S. Dist.

LEXIS 89258 *9-10 (N.D. Ill. July 11, 2016) ("When a federal statute is violated, and especially

when Congress has created a cause of action for its violation, by definition Congress has created

a legally protected interest that it deems important enough for a lawsuit."); *see also Mogg v.*

*Jacobs*, No. 15-CV-1142-JPG-DGW, 2016 U.S. Dist. LEXIS 33229, 2016 WL 1029396, at *5

(S.D. Ill. Mar. 15, 2016) ("Congress does have the power to enact statutes creating legal rights,

the invasion of which creates standing, even though no injury would exist without the statute,"

(quoting *Sterk v. Redbox Automated Retail, LLC*, 770 F.3d 618, 623 (7th Cir. 2014)). For this

reason, and to encourage consumers to bring FDCPA actions, Congress authorized an award of statutory damages for violations. 15 U.S.C. § 1692k(a).

59.     Moreover, Congress has explicitly described the FDCPA as regulating "abusive practices" in debt collection. 15 U.S.C. §§ 1692(a) – 1692(e). Any person who receives a debt collection letter containing a violation of the FDCPA is a victim of abusive practices. *See* 15 U.S.C. §§ 1692(e) ("It is the purpose of this subchapter to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses").

60.     15 U.S.C. § 1692e generally prohibits "any false, deceptive, or misleading representation or means in connection with the collection of any debt."

61.     15 U.S.C. § 1692e(2) specifically prohibits the "false representation of the character, amount, or legal status" of an alleged debt.

62.     15 U.S.C. § 1692e(5) specifically prohibits "the threat to take any action that cannot legally be taken or that is not intended to be taken."

63.     15 U.S.C. § 1692e(8) specifically prohibits "communicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed."

64.     15 U.S.C. § 1692e(10) specifically prohibits the "use of any false representation or deceptive means to collect or attempt to collect any debt."

65.     15 U.S.C. § 1692g states:

> (a) Notice of debt; contents
> Within five days after the initial communication with a consumer … a debt
> collector shall … send the consumer a written notice containing— …

12

(3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;

(4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and such verification or judgment will be mailed to the consumer by the debt collector;

(b) Disputed debts
…
Any communication during the 30-day period may not overshadow or be inconsistent with the disclosure of the consumer's right to dispute the debt ….

## COUNT I – FDCPA

66.     Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

67.     Upon information and belief, Exhibit B was mailed during the thirty-day validation period.

68.     The instruction that the consumer can dispute the debt by telephone is overshadowing of and inconsistent with the disclosure that the consumer must dispute the debt in writing to effectively trigger the full protections of the FDCPA.

69.     Defendant violated 15 U.S.C. §§ 1692e, 1692e(10), 1692g(a)(4) and 1692g(b).

## COUNT II – FDCPA

70.     Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

71.     Exhibits B-C contain contradictory and confusing account information.

72.     Exhibit B states that the debt has a "Last Paid Date" of February 11, 2018 but Exhibit C contradicts this information by stating that the "Last Paid Date" is "No Payment on Record" and that the "Payment Amount" was "No Payment on Record."

13

73.     Defendant violated 15 U.S.C. §§ 1692e, 1692e(2), 1692e(8), 1692e(10).

## COUNT III – FDCPA

74.     Plaintiff incorporates by reference as if fully set forth herein the allegations contained in the preceding paragraphs of this Complaint.

75.     The language in ACF's letters is false, misleading and confusing to the unsophisticated consumer, in that the language fails to state an amount of the debt.

76.     ACF's misrepresentation is a material false statement. Failure to state the amount of the debt is conduct that Congress has expressly made a violation of the FDCPA. 15 U.S.C. § 1692e(2)(a).

77.     Failure to provide an accurate amount of the debt is also a "false representation or deceptive means to collect or attempt to collect any debt. 15 U.S.C. § 1692e(10).

78.     Defendant violated 15 U.S.C. §§ 1692e, 1692e(2)(a), 1692e(10).

## CLASS ALLEGATIONS

79.     Plaintiff brings this action on behalf of two Classes.

80.     Class I ("Misleading Amount of Debt Class") consists of:

> (a) all natural persons in the United States of America (b) who were sent a collection letter by Defendant, (c) which did not state an amount of the debt (d) where the letter was mailed to attempt to collect a debt incurred for personal, family or household purposes, (e) on behalf of Midland Funding (f) between July 2, 2018 and July 2, 2019, inclusive, (g) and was not returned by the postal service.

81.     Class I includes a Wisconsin subclass consisting of:

> (a) all natural persons in the State of Wisconsin (b) who were sent a collection letter by Defendant, (c) which did not state an amount of the debt (d) where the letter was mailed to attempt to collect a debt incurred for personal, family or household purposes, (e) on behalf of Midland Funding (f) between July 2, 2018 and July 2, 2019, inclusive, (g) and was not returned by the postal service.

14

82. Class II ("Last Payment Amount Class") consists of:

(a) all natural persons in the United States of America (b) who were sent a collection letter by Defendant, (c) stating that the "Last Paid Date" was a date certain, (d) and who were sent a subsequent collection letter by Defendant (e) seeking to collect the same debt, (f) stating that the "Last Paid Date" was "No Payment on Record" (g) where the letter was mailed to attempt to collect a debt incurred for personal, family or household purposes, (h) on behalf of Midland Funding (i) between July 2, 2018 and July 2, 2019, inclusive, (j) and was not returned by the postal service.

83. Class II includes a Wisconsin subclass consisting of:

(a) all natural persons in the State of Wisconsin (b) who were sent a collection letter by Defendant, (c) stating that the "Last Paid Date" was a date certain, (d) and who were sent a subsequent collection letter by Defendant (e) seeking to collect the same debt, (f) stating that the "Last Paid Date" was "No Payment on Record" (g) where the letter was mailed to attempt to collect a debt incurred for personal, family or household purposes, (h) on behalf of Midland Funding (i) between July 2, 2018 and July 2, 2019, inclusive, (j) and was not returned by the postal service.

84. Each Class is so numerous that joinder is impracticable.

85. Upon information and belief, there are more than 50 members of each Class.

86. There are questions of law and fact common to the members of each Class, which common questions predominate over any questions that affect only individual class members. The predominant common question is whether the Defendant complied with the FDCPA.

87. Plaintiff's claims are typical of the claims of the members of each Class. All are based on the same factual and legal theories.

88. Plaintiff will fairly and adequately represent the interests of the members of each Class. Plaintiff has retained counsel experienced in consumer credit and debt collection abuse cases.

89. A class action is superior to other alternative methods of adjudicating this dispute. Individual cases are not economically feasible.

## JURY DEMAND

90.     Plaintiff hereby demands a trial by jury.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that the Court enter judgment in favor of Plaintiff and

the Classes and against Defendant for:

(a)     actual damages;

(b)     statutory damages;

(c)     attorneys' fees, litigation expenses and costs of suit; and

(d)     such other or further relief as the Court deems proper.

Dated:  July 2, 2019

**ADEMI & O'REILLY, LLP**

By:     /s/ John D. Blythin
        John D. Blythin (SBN 1046105)
        Mark A. Eldridge (SBN 1089944)
        Jesse Fruchter (SBN 1097673)
        Ben J. Slatky (SBN 1106892)
        3620 East Layton Avenue
        Cudahy, WI 53110
        (414) 482-8000
        (414) 482-8001 (fax)
        jblythin@ademilaw.com
        meldridge@ademilaw.com
        jfruchter@ademilaw.com
        bslatky@ademilaw.com

16